IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| CYNTHIA BEAMON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:23-cv-344-CWB |
| | ) | |
| MARTIN O'MALLEY,[1] | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.    Introduction and Administrative Proceedings**[2]

Cynthia Beamon ("Plaintiff") filed an application for widow's insurance benefits and/or surviving divorced spouse benefits under Title II of the Social Security Act on February 28, 2019. (Tr. 12). The claim was denied at the initial level on April 7, 2019 and again after reconsideration on September 4, 2020. (Tr. 12, 38, 58). Plaintiff then requested *de novo* review by an administrative law judge ("ALJ"). (Tr. 12, 61). The ALJ subsequently heard the case on November 9, 2021, at which time Plaintiff appeared with an attorney and testified. (Tr. 12, 238-257). The ALJ took the matter under advisement and issued a written decision on December 30, 2021 that found Plaintiff not entitled to benefits. (Tr. 12-16).

The ALJ's written decision contained the following factual background:

> The record reflects that Edward Beamon was last married to the claimant on September 27, 1985 in Alabama by a Clergyman or public official. The marriage ended in divorce on March 27, 1991. The claimant reported that after the divorce on March 27, 1991, the couple separated and lived in different households. She reported that in May 2001 she moved back into his household but they never

---

[1]  Martin O'Malley became Commissioner for the Social Security Administration on December 20, 2023 and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

[2]  References to pages in the transcript are denoted by the abbreviation "Tr."

1

> remarried. The claimant reported that she lived in the household until he died on December 4, 2013. They were divorced when he died. The claimant alleged that they lived in a common law marriage from 2001 to 2013 (Exhibits 5D, 2B, 4B).
>
> On a Request for Reconsideration, the claimant stated that she was applying for common law benefits. The claimant reported that she got a divorce in 1991 and that she and the decedent continued to see each other. She stated that she moved back in with him in 2001. The claimant alleged that she was in a common law marriage at the time of his death on December 4, 2013 (Exhibit 2B).

(Tr. 13, 46-47, 61, 139-40). Based upon that background, and after reviewing the record evidence as a whole, the ALJ found as follows:

> The claimant does not meet the durational requirement to be considered a "surviving divorced spouse." She and the decedent were married less than 10 years.
> \*\*\*
> In this case, there is not clear and convincing evidence that a common law marriage was in existence at the time of the decedent's death.

(Tr. 14, 15). On April 14, 2023, the Appeals Council denied Plaintiff's request for review (Tr. 1-5), thereby rendering the ALJ's decision the final decision of the Commissioner. *See, e.g., Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

Plaintiff now seeks judicial review of the final decision denying her claim for benefits. (Doc. 1 at pp. 1-2; Doc. 11 at pp. 1-2). The undersigned Magistrate Judge will construe Plaintiff's supporting brief (Doc. 11) as a motion for summary judgment and the Commissioner's opposition brief (Doc. 15) as a competing motion for summary judgment—thereby rendering the case ripe for review pursuant to 42 U.S.C. § 405(g). Upon consideration of the parties' submissions, the relevant law, and the record as a whole, the Magistrate Judge concludes that Plaintiff's motion for summary judgment is due to be denied, that the Commissioner's motion for summary judgment is due to be granted, and that the final decision is due to be affirmed.

## II. Standard of Review and Regulatory Framework

The court's review of the Commissioner's decision is a limited one. Assuming the proper legal standards were applied by the ALJ, the court is required to treat the ALJ's findings of fact as conclusive so long as they are supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla," but less than a preponderance, "and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence.") (citations omitted). The court thus may reverse the ALJ's decision only if convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied. *See Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). Reversal is not warranted simply because the court itself would have reached a contrary result. *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). Despite the deferential nature of its review, however, the court must look beyond those parts of the record that support the decision, must view the record in its entirety, and must take account of evidence that detracts from the evidence relied on in the decision. *See Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986); *see also Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

## III. Issue

Plaintiff raises one issue on appeal, arguing that the ALJ erred in finding that she was not in a common-law marriage at the time of the decedent's death. (Doc. 11 at pp. 1-2). The Commissioner conversely contends that substantial evidence supported the ALJ's finding that Plaintiff and the decedent were not validly married under Alabama law and that Plaintiff therefore

was not entitled to benefits. (Doc. 15 at pp. 1-2).

**IV.   Discussion**

"An individual may qualify for survivor's insurance benefit payments if she is either a widow (as defined in 42 U.S.C. § 416(c)) or a surviving divorced wife (as defined in 42 U.S.C. § 416(d)) to an insured decedent." *Torres v. Colvin*, No. 4:11-CV-4270-LSC, 2014 WL 795961 at *2 (N.D. Ala. Feb. 27, 2014); *see also* 42 U.S.C. §§ 402(e)-(f), 416(a),(c); 20 C.F.R. § 404.335. "The term 'surviving divorced wife' means a woman divorced from an individual who has died, but only if she had been married to the individual for a period of 10 years immediately before the date the divorce became effective." 42 U.S.C. § 416(d)(2). Thus, "[t]o qualify for widow's insurance benefits as a surviving divorced spouse, an individual must have been validly married to the wage-earner/insured for at least ten years before the divorce became final." *Torres*, 2014 WL 795961 at *2 (citing 20 C.F.R. § 404.336).

Here, Plaintiff does not dispute that she fails to qualify as a surviving divorced spouse. The record indeed reflects that she and the decedent were married for less than ten years. (*See* Doc. 11 at p.1; *see also* Tr. 29, 42, 46, 61, 140, 244). Accordingly, the ALJ's finding that Plaintiff did not meet the durational requirement to be considered a "surviving divorced spouse" was supported by substantial evidence, and any argument to the contrary has been abandoned by Plaintiff. *See Whitten v. Soc. Sec. Admin., Comm'r*, 778 F. App'x 791, 793-94 (11th Cir. 2019).

Plaintiff instead argues that she is entitled to widow's insurance benefits on the basis that she and the decedent lived in a common-law marriage from 2001 until the decedent's death on December 4, 2013. (Tr. 13, 29, 42, 46-49, 61, 138-42, 244). "The validity of the putative spouse's marriage is governed by the laws of the state where the insured was domiciled at time of death." *Torres*, 2014 WL 795961 at *2; *see also* 42 U.S.C. § 416(h)(1)(A)(i); 20 C.F.R. §§ 404.344,

4

404.345 ("To decide your relationship as the insured's wife or husband, we look to the laws of the State where the insured had a permanent home[3] when you applied for wife's or husband's benefits."); *see also Smith v. Heckler*, 707 F.2d 1284, 1285 (11th Cir. 1983) ("The appropriate criterion for evaluating a claimant's eligibility for widow's insurance benefits is determined according to the law of the insured's domicile at the time of his death."). Moreover, even if a court were to find that an applicant and an insured were not validly married, the applicant "shall, nevertheless be deemed to be the ... widow ... of such insured individual if such applicant would, under the laws applied by such courts in determining the devolution of intestate personal property, have the same status with respect to the taking of such property" as if she were the insured's surviving spouse. *See* 42 U.S.C. § 416(h)(1)(A)(ii); *see also* 20 C.F.R. § 404.345. Because the record reflects that the decedent was a resident of the State of Alabama at the time of his death, the law of Alabama provides the controlling standard. (Tr. 13-14, 29, 46, 61, 139-40, 222, 245-46).

At all times relevant to Plaintiff's claim, Alabama law considered common-law marriage "'as a co-equal, alternate method of validating the connubial union of two people.'" *Scott v. Bd. of Trustees of Mobile S.S. Ass'n-Int'l Longshoremen's Ass'n Pension, Welfare & Vacation Plans*, 540 So. 2d 657, 659 (Ala. 1988) (citation omitted).[4] "[W]hile no ceremony or particular words are necessary, there are common elements which must be present, either explicitly expressed or implicitly inferred from the circumstances, in order for a common-law marriage to exist."

---

[3] "Permanent home means the true and fixed home (legal domicile) of a person. It is the place to which a person intends to return whenever he or she is absent." 20 C.F.R. § 404.303.

[4] Although it abolished common-law marriage effective January 1, 2017, Alabama continues to recognize otherwise valid common-law marriages that were entered into before January 1, 2017. *See* Ala. Code § 30-1-20; *see also* SSA POMS GN 00305.075 - State Laws on Validity of Common-Law Non-Ceremonial Marriages - 12/07/2023 (last visited Feb. 26, 2024).

5

*Boswell v. Boswell*, 497 So. 2d 479, 480 (Ala. 1986). The required elements are: "1) capacity; 2) present, mutual agreement to permanently enter the marriage relationship to the exclusion of all other relationships; and 3) public recognition of the relationship as a marriage and public assumption of marital duties and cohabitation." *Id.*; *see also Chaney v. Colvin*, No. CV 14-00523, 2016 WL 777690 at *3 (S.D. Ala. Feb. 1, 2016), *report and recommendation adopted*, No. CV 14-00523, 2016 WL 814943 (S.D. Ala. Feb. 29, 2016). "Whether the essential elements of a common-law marriage exist is a question of fact." *Gray v. Bush*, 835 So. 2d 192, 194 (Ala. Civ. App. 2001) (internal citations omitted); *see also Boswell*, 497 So. 2d at 480 ("The determination of whether a relationship between a man and a woman was intended as a common-law marriage is made on the facts of a particular case, with regard to the situation and circumstances of the individuals involved.").

Alabama courts "closely scrutinize claims of common-law marriage and require clear and convincing proof thereof." *Lofton v. Estate of Weaver*, 611 So. 2d 335, 336 (Ala. 1992) (citations omitted); *Moore v. Metro. Life Ins. Co.*, 949 F. Supp. 2d 1201, 1206 (M.D. Ala. 2013). Clear and convincing evidence is defined as:

> Evidence that, when weighed against evidence in opposition, will produce in the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion. Proof by clear and convincing evidence requires a level of proof greater than a preponderance of the evidence or the substantial weight of the evidence, but less than beyond a reasonable doubt.

Ala. Code § 6-11-20(b)(4) (cited by *Dyess v. Dyess*, 94 So. 3d 384, 386-87 (Ala. Civ. App. 2012)).

The Commissioner concedes that Plaintiff has established the first requirement for a common-law marriage—the capacity to marry. (Doc. 15 at p. 9). There accordingly is no need for the court to address the specifics of that element. *See Moore*, 949 F. Supp. 2d at 1206; Ala. Code §§ 30-1-4, -5.

6

With respect to the second requirement, an "agreement to permanently enter the marriage relationship to the exclusion of all other relationships" may be inferred from the circumstances—such as "[i]f the couple consents and rears children together and others recognize them through their declarations and conduct as being married." *Id*. The same evidence that establishes the second requirement may also satisfy the third requirement. *Id*. "To prove this third prong, Alabama courts have looked to many factors": reliance on legal advice that a common-law marriage exists; sharing household expenses; maintaining joint accounts; referring to or introducing each other as spouse; filing joint-tax returns; using the same surname; self-designations on documents; and rearing children together. *Id*. 1206-07 (collecting cases). However, "the most crucial part of establishing th[e] third element is that others in the public recognize them as husband and wife." *Id*. at 1207.

With respect to the second and third elements, the ALJ reasoned as follows:

> There is no evidence that the claimant and decedent held any real property together jointly. They held a couple of bank accounts together, but were not designated as married in these accounts. They also maintained joint car insurance and other debts, but again, no designation was made in those documents as to their marital status. For whatever reasons, the claimant did not seek the intervention of state court in regards to whether or not she was entitled to a spousal share. The decedent's estate does not appear to have been submitted to any state court probate proceeding to determine the issue of whether or not the claimant and decedent were in a common law marriage. There are no life insurance policies where the claimant was listed as the decedent's beneficiary. Overall, the evidence specifically relating to decedent's intent does not meet the clear and convincing standard. There is some indication that the decedent may have filled out medical forms indicating the claimant was his wife, and there is also the fact of a marriage license application filled out shortly before his death. However, this is considerably less than the 9 months prior to a wage earner's death required to establish a valid marriage. Act § 216(g)(1)(E).[5] While there are many statements from friends and family, the decedent's brother stated, at most, *that to the best of his knowledge* the claimant and decedent were a married couple. Contemporaneous correspondence with decedent's family establishes, at most, that the claimant and decedent were considered to be "grandma" and "grandpa." The most favorable statements in the

---

[5] *See* 42 U.S.C. §§ 402(e), 416(c)(1); *see also* 20 C.F.R. § 404.335(a)(1).

7

> record to establish intent are from the claimant's blood relatives (ie. her mother and sister), not the decedent's blood relatives.
>
> In summary, the undersigned does not find by clear and convincing evidence that the claimant and decedent were in a common law marriage at the time of decedent's death. Accordingly, claimant's application for widow's insurance benefits must be denied.

(Tr. 15-16) (emphasis in original).

The ALJ's conclusion is supported by substantial evidence. For example, the ALJ observed that Plaintiff and the decedent held joint bank accounts only during certain periods (2004-2006 and 2008) and that Plaintiff only had written a few checks where she used "Mrs. Edward Beamon" as her signature. (Tr. 13, 104-09, 167). The ALJ further observed that Plaintiff submitted a form from a doctor's office listing the decedent's emergency contact as his "wife" but that it was unclear who filled out the form. (Tr. 13, 211). The same was true of an insurance assignment form with the doctor's office. (Tr. 13, 168). The ALJ likewise observed that a car insurance policy was held in the names of "Edward Beamon" and "Cynthia Beamon" between 2011 and 2013 but that there was no designation of marital status. (Tr. 13, 155, 176); nor was there any marital status designation on joint credit card bills and cell phone bills. (Tr. 13, 169, 174). The ALJ additionally observed that land was held in the decedent's name only, that cars were separately titled, that there was no life insurance policy, that no probate estate was ever opened in which Plaintiff alleged that she was entitled to a spousal share, that there was an altercation between the decedent's daughter and Plaintiff shortly before the decedent's death, that the death certificate listed the decedent as "divorced," and that the funeral notification did not list Plaintiff as the decedent's widow. (Tr. 13, 113-32, 158, 222, 248-49).

Although the ALJ also considered evidence that might be consistent with a common law marriage, such as statements submitted by friends and family that Plaintiff and the decedent held

8

themselves out as a married couple,[6] and the ALJ considered Plaintiff's testimony that she was living with the decedent when he passed away, that they were in a common law marriage, that they had an automobile insurance policy, credit card account, and bank account in both of their names, that they obtained a marriage license shortly before the decedent's death, that they considered themselves husband and wife, and that they never dated anyone else (Tr. 14, 29, 245-46, 250-51, 253), the ALJ reached the conclusion that the record as a whole did not satisfy the lofty "clear and convincing" standard as required to award benefits.[7]

"The law is clear that this Court may not re-weigh the evidence, try the case *de novo*, or substitute its own judgment for that of the Commissioner. The Commissioner's factual findings are conclusive if supported by substantial evidence." *Chaney*, 2016 WL 777690 at *4 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). Plaintiff therefore "'must do more than point to evidence in the record that supports her position; she must show the absence of

---

[6] The ALJ cited unsworn statements from Plaintiff's mother and sister that Plaintiff and the decedent were married, lived together as husband and wife, and referred to each other as such. (Tr. 14, 229-30). The ALJ also cited a March 25, 2014 notarized statement from the decedent's brother stating that to the "best of [his] knowledge," the decedent and Plaintiff were a married couple. (Tr. 14, 227). The ALJ additionally noted that Gladys Johns (sic), the decedent's cousin, stated in an unsworn statement that Plaintiff and the decedent were married for 28 years and that Plaintiff took care of the decedent until he died. (Tr. 14, 231). The ALJ similarly reviewed a notarized statement of Plaintiff's former coworker, Pearlie Griggs, who stated that she knew that Plaintiff and the decedent were married when Plaintiff worked with her; however, the ALJ noted that Griggs did not state when she and Plaintiff worked together—as they may have worked together when Plaintiff and the decedent were legally married—and that she made no reference to whether Plaintiff and the decedent publicly held themselves out as married. (Tr. 14, 232). The ALJ considered the June 28, 2019 statement of Plaintiff's sister, Eurethia Rochelle, who stated that Plaintiff and the decedent always referred to themselves as husband and wife and that the decedent wanted his brother to take care of Plaintiff. (Tr. 14, 134-35). And the ALJ noted that various cards from family members referred to Plaintiff and the decedent as grandmother and grandfather but that none of them was addressed to "Mr. and Mrs. Beamon." (Tr. 14, 185-209).

[7] The ALJ noted that in 2012 Plaintiff filed a federal tax return as "married filing separate," with the decedent listed as her husband, but that there was no corresponding tax return for the decedent available for that year. (Tr. 13, 170-73).

9

substantial evidence supporting the ALJ's conclusion.'" *Thompkins v. Kijakazi*, No. 2:21-CV-216, 2022 WL 2517185 at *7 (M.D. Ala. July 6, 2022) (quoting *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017) (*per curiam*)); *Lanier v. Colvin*, No. CV414-004, 2015 WL 3622619 at *1 (S.D. Ga. June 9, 2015) ("The fact that Plaintiff disagrees with the ALJ's decision, or that there is other evidence in the record that weighs against the ALJ's decision, does not mean that the decision is unsupported by substantial evidence.") (citing *Crawford*, 363 F.3d at 1158-59). Put most simply, "[t]o the extent Plaintiff disagrees with the ALJ's interpretation of that evidence, that is not a ground for remand." *Horne v. Comm'r of Soc. Sec.*, No. 2:20-CV-181, 2021 WL 3023679 at *5 (M.D. Fla. June 28, 2021), *report and recommendation adopted*, No. 2:20-CV-181, 2021 WL 3022727 (M.D. Fla. July 16, 2021) (citing *Sarria v. Comm'r of Soc. Sec.*, 579 F. App'x 722, 724 (11th Cir. 2014)); *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) ("'We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner.' 'If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it.'") (citations omitted).

**V.    Conclusion**

After carefully and independently reviewing the record, and for the reasons stated above, the undersigned Magistrate Judge concludes that the ALJ's decision indeed is supported by substantial evidence. Accordingly, the Magistrate Judge hereby **RECOMMENDS** as follows:

- that Plaintiff's construed motion for summary judgment (Doc. 11) be **DENIED**;

- that the Commissioner's construed motion for summary judgment (Doc. 15) be **GRANTED**; and

- that the Commissioner's decision be **AFFIRMED**.

It is **ORDERED** that any objections to this Recommendation must be filed by **March 29, 2024**. An objecting party must identify the specific portion(s) of factual findings or legal conclusions to which objection is made and must describe in detail the basis for each objection. An objecting party also must identify any claim or defense that the Recommendation has not addressed. Frivolous, conclusive, or general objections will not be considered.

After receiving all objections, the District Judge will conduct a *de novo* review of the findings or recommendations to which objection is made. The District Judge may accept, reject, or modify the Recommendation or may refer the matter back to the Magistrate Judge with instructions for further proceedings. *See* 28 U.S.C. § 636(b)(1)(C). A party shall be deemed to have waived the right to challenge on appeal a District Judge's order to the extent it is based upon unobjected-to findings or recommendations. The court on appeal may review unobjected-to factual and legal conclusions only for plain error if necessary in the interests of justice. *See* 11th Cir. R. 3-1.

No party may appeal this Recommendation directly to the United States Court of Appeals for the Eleventh Circuit. A party may appeal only from a final judgment ultimately entered by the District Judge.

**DONE** this the 15th day of March 2024.

_____
**CHAD W. BRYAN**
**UNITED STATES MAGISTRATE JUDGE**